UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

TERRI C.,[1]                                                   Case No. 1:21-cv-157

      Plaintiff,                                    Bowman, M.J.

  v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Terri C. filed this Social Security appeal in order to challenge the Defendant's finding that she is not disabled. *See* 42 U.S.C. § 405(g). Proceeding through counsel, Plaintiff presents one claim of error for this Court's review. The Commissioner's finding of non-disability will be REMANDED for further fact-finding.[2]

**I. Summary of Administrative Record**

In May 2016, Plaintiff applied for disability insurance benefits alleging a disability onset date of September 26, 2015. (Tr. 140). Her application was denied initially and upon reconsideration. (Id.). Plaintiff, represented by counsel, subsequently appeared and testified at an administrative hearing before ALJ Meadows (Id.). The ALJ issued a decision in January 2019, finding Plaintiff not disabled. (Tr. 140-52). In May 2020, the Appeals Council granted Plaintiff's request for review and remanded the case for the ALJ to further evaluate Plaintiff's mental impairments and further consider Plaintiff's residual

---

[1]The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials. *See* General Order 22-01.
[2]The parties have consented to the jurisdiction of the undersigned magistrate judge. *See* 28 U.S.C. §636(c).

1

functional capacity. (Tr. 159). On remand, in August 2020, a new hearing was held in front of ALJ Meadows. Plaintiff, her attorney, and an impartial vocational expert appeared at the telephonic hearing. (Tr. 20, 43- 73). In September 2020, the ALJ concluded that Plaintiff was not disabled from September 26, 2015, the alleged onset date of disability, through the date of the decision. (Tr. 20-37). The Appeals Council declined further review, leaving the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed this judicial appeal.

Plaintiff was 41 years old on her alleged date of disability. She graduated from high school and has past relevant work as grocery stock clerk. The ALJ determined that Plaintiff has severe impairments of "diabetes mellitus, conversion disorder, peripheral neuropathy, minor cervical degenerative disc disease, obesity, major depressive disorder, and anxiety disorder." (Tr. 23). Although Plaintiff argued at the hearing that her impairments were of listing level severity, the ALJ found that none of the impairments, alone or in combination, met or medically equaled any Listing in 20 C.F.R. Part 404, Subpart P, Appx. 1, such that Plaintiff would be entitled to a presumption of disability. (*Id.*)

The ALJ determined that Plaintiff could perform a range of sedentary work, subject to the following:

> She can occasionally climb ramps and stairs and never climb ladders, ropes, and scaffolds. She is limited to occasionally balancing, stooping, kneeling, crouching and never crawling. She can have no exposure to hazards of unprotected heights or dangerous moving machinery. She is limited to no commercial driving. She is limited to frequent handling and fingering with her right upper extremity. She is limited to simple, routine tasks. She is limited to low stress jobs, defined as jobs with only occasional decision making required and only occasional changes in the work setting or duties, and limited to a setting with no sustained fast paced tasks or production rate pace. She is limited to occasional interaction with

> coworkers, supervisors, no joint tasks; no over the shoulder supervision; and no interaction with the general public.

(Tr. 27).

Based upon the RFC and testimony from the vocational expert, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy, including addresser, document preparer, and cutter and paster. (Tr. 37). Plaintiff urges this Court to reverse, arguing that the ALJ erred in evaluating the opinion of her treating physician, Dr. Lunderman. The undersigned agrees and for the reasons explains below, finds that this matter should be remanded for further fact-finding.

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports

3

the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion.... The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an

impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job. 42 U.S.C. § 423(d)(1)(A).

### B. The ALJ's Decision

Plaintiff argues first that the ALJ erred by failing to give controlling weight to the opinion of Plaintiff's treating physician, Dr. Lunderman. The record indicates that Plaintiff began treating with Dr. Lunderman in 2018 for depression and anxiety. In November 2018, Dr. Lunderman opined that Plaintiff is seriously limited with regard to her vocational abilities. Notably, he found that Plaintiff had marked limitations in activities of daily living, maintaining social functioning, maintaining concentration, persistence or pace and would have one or two episodes of decompensation with[in] a year each lasting at least two weeks. (Tr. 34).

In formulating Plaintiff's mental RFC, the ALJ assigned little weight to Dr. Lunderman's findings, noting that his opinion was "not consistent with the medical evidence as a whole since the alleged onset date. (Tr. 34). In this regard, the ALJ noted that the record routinely notes that there are no issues with her attention span and concentration and Dr. Lunderman has recently described Plaintiff as having an euthymic mood. The ALJ further noted that Dr. Lunderman has only treated Plaintiff since 2018 and the record contains limited visits since treatment began. "This very limited treatment history weighs against his report, and suggests he may have over-relied on the Plaintiff's subjective complaints rather than longitudinal clinical findings." (Tr. 35). Additionally, the ALJ found that his opinion is rather vague as he describes her limitations as "seriously limited" which is not clearly correlated with deficits for any specific functional tasks. (Id.)

5

Plaintiff argues that the ALJ's findings in this regard is not supported by substantial evidence. The undersigned agrees.

At the time of Plaintiff's application, the regulations and controlling law provided that when evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner Of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician. *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2)-(d)(6)).

Upon careful review, the undersigned findings that the ALJ's findings, at least in part, failed to comport with Agency regulations and controlling law. As noted above, the ALJ rejected the findings of Dr. Lunderman, in part, because his opinions were based upon Plaintiff's self-reports of her symptoms. As noted above, the ALJ found that Dr. Lunderman's "very limited treatment history weights against his report, and suggests he may have over-relied on the Plaintiff's subjective complaints rather than longitudinal clinical findings." (Tr. 35). However, contrary to the findings of the ALJ, the fact that those opinions were based on Plaintiff's self-reports does not provide an adequate basis to

6

reject such findings. Notably, the Sixth Circuit Court of Appeals, citing *Poulin v. Bowen*, 817 F.2d 865 (D.C. Cir. 1987), stated that:

> A psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as a medical impairment ... consequently; the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine.... In general, mental disorders cannot be ascertained and verified as are most physical illnesses, for the mind cannot be probed by mechanical devices [sic] in order to obtain objective clinical manifestations of medical illness.... When mental illness is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected simply because of the relative imprecision of the psychiatric methodology or the absence of substantial documentation, unless there are other reasons to question the diagnostic techniques.

*Blankenship v. Bowen,* 874 F.2d 1116, 1121, (6th Cir. 1989).

In *Blankenship*, the Sixth Circuit concluded that no cause existed to question the diagnosis of a psychiatrist made after only one interview and where no psychological testing had been conducted and even though the doctor noted the need for a more accurate history. *Blankenship*, 874 F.2d at 1121. Thus, interviews are clearly an acceptable diagnostic technique in the area of mental impairments and Dr. Lunderman could rely upon Plaintiff's subjective complaints elicited during her treatment sessions in formulating Plaintiff's functional restrictions. See *Warford v. Astrue*, No. 09–52, WL 3190756, at *6 (E.D. Ky. Aug. 11, 2010) (finding interviews are an acceptable diagnostic technique in the area of mental impairments).

As noted above, the Commissioner is required to provide "good reasons" for discounting the weight given to a treating-source opinion. Id. § 404.1527(c)(2). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the

7

treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996). This procedural requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Such is not the case here, the record presented does not provide for such meaningful review.

Furthermore, as noted by Plaintiff, Dr. Lunderman's opinion does find objective clinical support in the medical record. His own mental status exams, for example, document depressed mood, anxious affect, irritable affect, and blunted affect. (Tr. 883, 901, 903, 904, 908). Notably, these clinical signs and symptoms are consistent with the clinical findings Dr. Lunderman noted in support of his Mental Impairment Questionnaire, where he listed marked depression with irritability, marked anxiety with excessive worry, low energy, and mood instability as clinical findings that demonstrate the severity of Plaintiff's impairments and symptoms. (Tr. 889, 892). Dr. Lunderman increased the prescribed dose of psychiatric medication in August 2018 and again in November 2018. (Tr. 908).

Additionally, Dr. Lunderman's findings are also consistent with the findings of Taylor Gronck, Psy.D, who performed a consultative examination in October 2016. Namely, Dr. Groneck found that Plaintiff performed poorly on short-term verbal recall task and had difficulty concentrating, presumably due to fatigue. (Tr. 608). She presented as "distant and difficult to engage." Id. Dr. Groneck opined that she may experience a subjective sense of increased fatigue in response to high work demands and intense workplace pressures. Id.

8

As a rule, the ALJ must build an accurate and logical bridge between the evidence and his conclusion. *Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio 2011); see also *Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544–546 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion). Thus, "an ALJ's decision must articulate with specificity reasons for the findings and conclusions that he or she makes." *Bailey v. Commissioner of Social Security*, 173 F.3d 428, 1999 WL 96920 at *4 (6th Cir. Feb, 2, 1999). *See also Hurst v. Secretary of Health and Human Services*, 753 F.2d 517 (6th Cir. 1985) (articulation of reasons for disability decision essential to meaningful appellate review); Social Security Ruling (SSR) 82–62 at *4 (the "rationale for a disability decision must be written so that a clear picture of the case can be obtained").

Here, the ALJ's evaluation of the opinion evidence does not build an accurate and logical bridge between the evidence and his conclusion and his reasons for rejecting Dr. Lunderman's findings are not "good reasons" as outlined by controlling law. As such, this matter should be remanded because there is insufficient evidence in the record to support the Commissioner's conclusions. On remand, the ALJ should be instructed to properly evaluate and weigh the opinion evidence in accordance with Agency regulations and controlling law.

### III. Conclusion and Order

This matter is herein remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. A sentence four remand

under 42 U.S.C. § 405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher*, 17 F.3d at 175. Here, all essential factual issues have not been resolved in this matter, nor does the current record adequately establish Plaintiff's entitlement to benefits as of her alleged onset date. *Faucher*, 17 F.3d at 176.

For the reasons explained herein, **IT IS ORDERED THAT** Defendant's decision is **REVERSED AND REMANDED** under sentence four, for further development of the record consistent with this report and recommendation, that judgment be entered, and that this case is **CLOSED.**

    *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge